## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 48769

| | | |
|---|---|---|
| 3G AG LLC, an Idaho limited liability company, | ) ) ) | |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| IDAHO DEPARTMENT OF WATER RESOURCES, | ) ) ) | |
| Respondent, | ) ) | Boise, February 2022 Term |
| and | ) ) | Opinion filed: May 18, 2022 |
| A&B IRRIGATION DISTRICT, BURLEY IRRIGATION DISTRICT, MILNER IRRIGATION DISTRICT, AMERICAN FALLS RESERVOIR DISTRICT #2, MINIDOKA IRRIGATION DISTRICT, NORTH SIDE CANAL COMPANY and TWIN FALLS CANAL COMPANY, | ) ) ) ) ) ) ) ) | Melanie Gagnepain, Clerk |
| Intervenors-Respondents. | ) ) | |
| IN THE MATTER OF APPLICATION FOR TRANSFER NO. 83160 IN THE NAME OF JEFFREY AND CHANA DUFFIN. | ) ) ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Eric J. Wildman, District Judge.

The judgment of the district court is affirmed.

Holden Kidwell Hahn & Crapo, P.L.L.C. Idaho Falls, for Appellants. Robert L. Harris argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent Idaho Department of Water Resources. Michael C. Orr argued, and Garrick L. Baxter appeared.

Baker Rosholt & Simpson, LLP, Twin Falls, for Intervenors A&B Irrigation District, Burley Irrigation District, Milner Irrigation District, North Side Canal Company, and Twin Falls Canal Company.

Fletcher Law Office, Burley, for Intervenors American Falls Reservoir District #2 and Minidoka Irrigation District. William Kent Fletcher argued.

_____

STEGNER, Justice.

This appeal concerns the denial of an application to transfer a ground water right that currently benefits 53.9 acres which also has an entitlement to surface water rights. The transfer application sought to unstack these two overlapping rights by transferring the ground water right to irrigate a different property, which would double the number of acres being irrigated. The Idaho Department of Water Resources ("IDWR") denied the transfer because, among other reasons, approving it would cause an "enlargement" in the use of water as proscribed by Idaho Code section 42-222(1). On judicial review, the district court agreed with the denial and affirmed. We affirm the decision of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This appeal centers around IDWR's denial of Application 83160, brought by Jeffrey and Chana Duffin ("Duffin"), to transfer the licensed ground water right 35-7667 (the "ground water right" or "35-7667") to a different parcel of land. During the appeal of this case, 3G AG LLC ("the LLC") "purchased from Duffin the property where water right 35-7667—the water right subject to Transfer No. 8316 which is the subject of this appeal—is located." As a result of the transfer of ownership, the LLC sought to substitute itself for Duffin. Because there was no objection to the substitution, it was allowed.[1] The material facts leading up to the denial are undisputed.

In 1977, IDWR granted a ground water permit for 35-7667 to irrigate the existing place of use in this appeal (i.e., the 53.9 acres). The application for the permit reported that there were no other water "rights" used for the "same purposes" at this place of use. IDWR's analysis of the application reached the same conclusion. The then owner of the 53.9 acres eventually submitted proof of beneficial use for the ground water permit on June 11, 1992. That date became the priority

---

[1] Pursuant to our authority under Idaho Appellate Rule 6 to amend the caption of an appeal, we have amended the caption in this case to reflect the substitution of Duffin by the LLC.

2

date, and four years later, IDWR examined whether the permit for 35-7667 should be processed into a licensed ground water right. During this time, IDWR's field exam notes explained that the same place of use for 35-7667 (the 53.9 acres) was also benefited by a surface water entitlement through 60 shares in the Aberdeen-Springfield Canal Company (the "surface water entitlement"). Nevertheless, IDWR's field report later documented that there were no overlapping water "rights" benefiting the 53.9 acres.

In 1993, IDWR ordered a moratorium on processing applications for new surface or ground water diversions in the Eastern Snake River Basin—the same area where the 53.9 acres is located. The moratorium, which is still in effect today, explains that

> [g]round water aquifers have become stressed by the reduction in natural recharge due to changes in diversion and use of surface waters throughout the basin and by the increased volume of pumping occurring to augment scarce surface water supplies during the drought period. The lowered water levels in the aquifers across much of the Snake River Basin in southern Idaho have resulted in numerous wells, often those used for domestic and municipal water supply purposes becoming unusable. Lowered ground water levels also reduce spring and base flow discharge needed to maintain stream and river flows.

In 2001, IDWR granted a license for the ground water right. The license stated, among other things, that it had a maximum diversion rate of 1.1 cubic feet per second; it had a maximum diversion volume of 220-acre feet; the source was ground water; and the beneficial use was irrigation. The license also contained a condition that "[t]his right when combined with all other rights shall provide no more than 0.02 [cubic-feet per second] per acre nor more than 4.0 [acre-feet annually] per acre at the field headgate for irrigation of the lands above."

Seven years later, in 2008, the Idaho Legislature adopted IDWR's comprehensive management plan for the Eastern Snake Plain Aquifer ("the ESPA"). This plan was prepared by IDWR in response to "declining aquifer levels and spring discharges and changing Snake River flows that resulted in insufficient water supplies to satisfy existing beneficial uses." One objective of the plan is to "reduce the withdrawals" from the ESPA. Another objective is to "increase recharge" to the ESPA. Most of the recharge water comes through the Snake River, or its tributaries. This includes surface water recharge through the Aberdeen-Springfield Canal Company's water entitlements. In sum, the plan governs roughly 2.1 million irrigated acres on top of the ESPA. Of these acres, approximately 871,000 acres are irrigated from surface water, 889,000 acres are irrigated from ground water, and 348,000 acres are irrigated from both sources.

3

One year after implementing the plan, IDWR issued a guidance document for processing water right transfers under Idaho Code section 42-222(1) (the "Transfer Memo"). The Transfer Memo explains that a transfer application, under section 42-222(1), is required whenever a water right holder desires to change one, or multiple, water right "elements" on a licensed or decreed right. This includes changes to the point of diversion or place of use. The Transfer Memo goes on to explain the requirements for an acceptable transfer application. It also elaborates upon what may constitute "enlargement" in use of a water right. Part of its guidance as to whether approving a transfer will enlarge the use of a water right addresses "stacked" or overlapping water rights benefiting the same place of use.

In 2012, Duffin acquired ownership of the property to which the ground water right and surface water entitlement attached. Three years later, in 2015, IDWR approved Duffin's application to divide the ground water right so that the place of use was identified as the 53.9 acres that the right presently benefits. The license was amended to reflect this change, but otherwise remained the same. Five years after that, in 2017, Duffin ceased using the ground water right to irrigate the 53.9 acres and instead began exclusively using the surface water entitlement.

Two years later, in 2019, Duffin submitted Transfer Application 83160 to change the point of diversion and place of use for the ground water right to benefit a different property. In the application, Duffin reported that the existing place of use (the 53.9 acres) would still be irrigated with the surface water entitlement if the transfer were approved. The local watermaster did not oppose the proposed transfer. However, a notice of protest to the transfer was filed by A&B Irrigation District, Burley Irrigation District, Milner Irrigation District, American Falls Reservoir District #2, Minidoka Irrigation District, North Side Canal Company, and Twin Falls Canal Company (collectively "the Coalition"). The Coalition objected to the transfer, arguing that approving it would cause an enlargement in use of the ground water right and injure existing water rights.

After numerous status conferences, Duffin and the Coalition agreed that an evidentiary hearing was not needed because the material facts were not in dispute. Subsequently, the parties filed a statement of stipulated facts. From this, the hearing officer requested briefing on how to resolve the sole legal question: whether Duffin's application satisfied the transfer criteria set forth in Idaho Code section 42-222(1) such that the transfer must be approved. After the parties

4

submitted their briefing, the hearing officer issued a preliminary order denying Duffin's application to transfer the ground water right.

Duffin petitioned for reconsideration. The hearing officer granted the petition in part and issued an amended preliminary order. However, this order still denied Duffin's transfer application. In August of 2020, the amended preliminary order became final after it was adopted in whole by the director of IDWR (the "Final Order"). The Final Order made the following findings, among others, based on the stipulated facts: the ground water right has been exclusively used to irrigate the existing place of use (the 53.9 acres) since at least April 1, 1980; the same place of use is also benefited by a surface water entitlement that has been appurtenant to it since at least 1970; the two rights have never been used together in the same year to irrigate the existing place of use; the ground water right has been used to irrigate the existing place of use up to 2017; and from 2017 to the present day, the surface water entitlement has been used to irrigate the place of existing use.

The Final Order applied these facts to this Court's discussion of the term "enlargement" in *Barron v. Idaho Department of Water Resources*, 135 Idaho 414, 18 P.3d 219 (2001). *Barron* dealt with a transfer application proposing to unstack overlapping ground and surface water rights. As discussed below, the Final Order reasoned that, under *Barron*, approving the transfer would cause an enlargement in use of the ground water right and injury to other water rights. In addition, approval was not consistent with the conservation of water resources in Idaho or the local public interest. From this, the Final Order concluded that the transfer must be denied because the criteria in Idaho Code section 42-222(1) had not been met.

Roughly one month later, in September 2020, Duffin petitioned the district court for judicial review of the Final Order. Pursuant to a December 9, 2009, administrative order from this Court, the matter was assigned to the district judge presiding over the Snake River Basin Adjudication. The district court permitted the Coalition to intervene in Duffin's petition, and in February of 2021, the court held oral argument. Approximately two weeks later, the district court issued a memorandum decision affirming the Final Order and IDWR's decision to deny Duffin's transfer application. The district court, among other things, agreed with the Final Order's reliance on *Barron* as dispositive and found that approval of the transfer would cause an "enlargement" in use of the ground water right and injury to other water rights. Thus, the district court concluded

that Duffin's application for transfer under Idaho Code section 42-222(1) was appropriately denied by IDWR.

Duffin timely filed a notice of appeal.

## II.  STANDARD OF REVIEW

Judicial review of a final decision or order from the director of IDWR is authorized by Idaho Code section 42-1701A(4) and governed by the provisions and standards under the Idaho Administrative Procedure Act ("IDAPA"). *See* I.C. §§ 67-5201 to -5292.

In an appeal from the decision of a district court acting in its appellate capacity under IDAPA, we review the agency record independently of the district court's decision. *A & B Irr. Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505, 284 P.3d 225, 230 (2012). We will not "substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1). However, we exercise *de novo* review over questions of law. *In Re SRBA Case No. 39576 Sucbase No. 37-00864*, 164 Idaho 241, 248, 429 P.3d 129, 136 (2018).

When an agency is required by the provisions of IDAPA, or by other provisions of law, to issue an order, a reviewing court shall affirm the agency action unless the court finds that the agency's "findings, inferences, conclusions, or decisions" are:

> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) not supported by substantial evidence on the record as a whole; or
> (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

If the reviewing court does not affirm the agency action, "it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." *Id*. However, even if one of the conditions in section 67-5279(3)(a)-(e) is met, a reviewing court should still affirm the agency action "unless substantial rights of the appellant have been prejudiced." *A & B Irr. Dist.*, 153 Idaho at 505–06, 284 P.3d at 230–31 (quoting I.C. § 67-5279(4)).

## III.  ANALYSIS

This appeal hinges on the interpretation of "enlargement" under Idaho Code section 42-222(1) as it relates to a transfer application proposing to unstack overlapping ground and surface water rights. The LLC, which substituted for Duffin, maintains that IDWR's decision to deny the transfer application violates applicable statutory provisions and is in excess of its statutory

6

authority. *See* I.C. § 67-5279(3)(a), (b). All material facts are undisputed. Accordingly, the LLC's challenge to the denial of its transfer application presents a pure question of law.

**A. Approving the transfer application would cause an "enlargement in use" of the ground water right under Idaho Code section 42-222(1) and *Barron v. Idaho Department of Water Resources*, 135 Idaho 414, 18 P.3d 219 (2001).**

Idaho Code section 42-222(1) sets forth the criteria used by IDWR to evaluate applications to transfer water rights whenever a right holder desires to change a water right's "point of diversion, place of use, period of use[,] or nature of use[.]" IDWR must furnish the form required to complete a transfer application. I.C. § 42-222(1). When evaluating an application, the statute instructs IDWR to, among other things, examine "all the evidence and available information" and to approve the application *unless* approval would: (1) injure other water rights; (2) constitute an "enlargement in use of the original right"; (3) be contrary to the conservation of water resources within the state of Idaho; or (4) be contrary to the "local public interest[.]" *Id.*; *see also* I.C. § 42-202B(3) (defining "local public interest"). IDWR may consider "consumptive use" as one factor in its "enlargement" evaluation. I.C. § 42-222(1); *see also* I.C. § 42-202B(1) (defining "consumptive use").

In this case, IDWR, in its Final Order, denied the application to transfer the ground water right after concluding approval of the transfer would: (1) constitute an enlargement in use of the ground water right; (2) injure other water rights in either the Upper Snake River system or the ESPA; (3) be contrary to the conservation of water resources in the state of Idaho; and (4) be contrary to the local public interest as the proposed point of diversion is within the 1993 moratorium aimed at recharging the ESPA and concomitantly reducing withdrawals. The linchpin of IDWR's decision is that approval of the transfer would constitute an "enlargement" under this Court's enlargement and unstacking analysis in *Barron v. Idaho Department of Water Resources*, 135 Idaho 414, 18 P.3d 219 (2001).

On appeal, the LLC rejects the theory of enlargement in *Barron* as *dicta* and advances its own theory of what an "enlargement" analysis should look like under Idaho Code section 42-222(1). Under the LLC's theory, the plain language of section 42-222(1) limits IDWR to examining the four corners of the license or decree of the water right to be transferred (the "original right") when determining whether approving the transfer will cause a prohibited enlargement. The LLC maintains that IDWR erred by examining all relevant water rights or entitlements implicated

7

by the transfer, and imputing limitations or conditions on the right to be transferred that do not appear on the face of its license.

The LLC points out that the license for the ground water right does not contain any express limitations on its beneficial use apart from a limitation memorializing the "duty of water" under Idaho Code section 42-220. From this, the LLC maintains that IDWR improperly added a "single combined beneficial use" limit to the ground water right, in its relationship to the surface water entitlement, that does not exist within the four-corners of the ground water right's license. If this "error" is corrected, the LLC argues that unstacking the ground water right and transferring it to a new parcel will not cause an "enlargement" under section 42-222(1). This is because the ground water right, without any limitations on its face to combine it with the surface water entitlement, is a stand-alone right that can be freely transferred.

In other words, the LLC maintains that whether the ground and surface water rights are *in fact* stacked and benefit the same 53.9 acres is not relevant to the "enlargement" analysis under section 42-222(1) because the license for the ground water right does not provide that this overlap limits the ground water right in any way. The LLC claims that holding otherwise would collaterally add limits to a previously licensed water right. In addition, the LLC points to the Transfer Memo as supporting its theory of enlargement and argues the Transfer Memo was improperly denied "considerable weight" as an agency interpretation of Idaho Code section 41-222(1).

In response, IDWR and the Coalition advance essentially the same position they did below: that *Barron* provides the correct "enlargement" analysis in this context, and that it was properly applied. For the reasons discussed below, we reject the LLC's new theory of enlargement as contrary to the plain language of Idaho Code section 42-222(1) and our decision in *Barron*. Accordingly, we affirm the district court's decision that the Final Order correctly denied the proposed transfer.

To begin, the meaning of "enlargement" under Idaho Code section 42-222(1) is not defined by statute or rule. *See* I.C. §§ 42-201 to -250; IDAPA 37.01.01.000–.999. In *Fremont-Madison Irrigation District & Mitigation Group v. Idaho Ground Water Appropriators, Inc.*, we defined "enlargement" in the context of water right transfers under Idaho Code section 42-1425(2). 129 Idaho 454, 458, 926 P.2d 1301, 1305 (1996). "Section 42-1425(2) of the Idaho Code provides for a transfer of an existing water right for any change made prior to the date of commencement of the [Snake River Basin Adjudication], regardless of compliance with sections 42-108 and 42-222,

8

'provided no other water rights existing on the date of the change were injured and the change did not result in an enlargement of the original right.'" *Id.*

In *Fremont-Madison*, we noted that section 42-1425(2) did not define the term "enlargement." *Id.* Nevertheless, we said "enlargement" is understood "to refer to any increase in the beneficial use to which an existing water right has been applied, through water conservation and other means." *Id.* (citing I.C. § 42-1426(1)(a)). An "enlargement" can also include an "increase in the volume of water diverted" as a result of the transfer. *Fremont-Madison Irr. Dist. & Mitigation Grp.*, 129 Idaho at 458, 926 P.2d at 1305. Thus, there are two types of enlargement: (1) "an increase in the number of acres irrigated"; and (2) "an increase in the rate of diversion or duration of diversion." *Id.* Although *Fremont-Madison* dealt with "enlargement" in the context of transferring water rights under section 42-1425(2) and not section 42-222(1), there is no language in either statute that suggests the Idaho Legislature intended "enlargement" to mean something different as between these two transfer statutes.

In *Barron*, we specifically addressed both types of "enlargement" in the context of a transfer under section 42-222(1). 135 Idaho at 419–20, 18 P.3d at 224–25. In that case, Barron proposed to transfer a surface water right by unstacking it from an overlapping ground water right at the existing place of use, and then establishing two new points of diversion—one fifteen miles upstream and the other eighty miles downstream. *Id.* at 415, 18 P.3d at 220. At the place of existing use, the surface water right overlapped with, and benefited, the same 311 acres as the ground water right. *Id.* The two "enlargement" issues in *Barron* were whether: (1) the transfer would cause an increase in the rate or duration of diversion at the two proposed points of diversion; and (2) whether unstacking the overlapping surface and ground water rights would cause an increase in the total number of acres irrigated, i.e., an increase in overall beneficial use. *Id.* at 419–420, 18 P.3d at 224–25. Under the first issue, we affirmed the decisions below that Barron failed to provide any meaningful evidence regarding the period of use, amount of water to be diverted or consumed, or whether and to what extend the ground water right was used to supplement the surface water right. *Id.* at 419, 18 P.3d at 224. Thus, *one* reason for the denial was because Barron did not carry his burden to show that approving the transfer would not cause an increase in the rate of, or duration of, overall diversion. *Id.*

Under the second issue, which is relevant to this case, we also affirmed the decisions below that, as a matter of law, unstacking the overlapping water rights would cause an "enlargement" if

the result is that the two rights would irrigate more acres than are benefited at the existing place of use. *Id*. at 420, 18 P.3d at 225. Barron did not challenge this theory of "enlargement" under Idaho Code section 42-222(1). *See id*. Instead, Barron contended that he provided sufficient evidence that the surface water right was a "stand alone" right and that the existing place of use, the 311 acres, would be "farmed as dry land" to prevent any enlargement once the surface water right was transferred to the proposed place of use. *Id*. However, we rejected this argument because Barron did not own or exercise control over the existing place of use he claimed would be relegated to dry farming after the transfer. *Id*. Barron's proposal was "in reality an attempt to shift the burden of preventing enlargement to [] IDWR, yet it is Barron and not [IDWR] who bears this burden." *Id*.

Due to the relationship of the stacked rights, *Barron* held that the surface water right was subject to the overlapping ground water right's "utilization." *Id*. We concluded Barron did not provide sufficient evidence to show unstacking these rights would not cause an enlargement through an increase in total acres irrigated. *Id*. From this, we affirmed the denial of Barron's transfer application after reaching the merits of *both* enlargement issues under Idaho Code section 42-222(1). *Id*. Accordingly, IDWR and district court were correct to conclude *Barron* provides precedent for a transfer application seeking to unstack overlapping water rights. Contrary to the LLC's arguments, *Barron*'s theory of enlargement under section 42-222(1) in the context of unstacking is not *dicta*. Even if it were, we conclude that it is a correct statement of law.

In applying *Barron* to the transfer application in this case, the Final Order concluded that the proposed change to the ground water right would result in "an increase in the number of acres irrigated, which is an enlargement" because the ground water right and surface water right would provide irrigation for 107.8 acres, which would double the number of acres currently being irrigated with the "stacked" rights:

> The proposed change to water right 35-7667 [ground water right] will result in an increase in the number of acres irrigated, which is an enlargement, as noted above. Currently, water right 35-7667 [ground water right] and the ASCC shares [surface water entitlement] authorize the irrigation of the same 53.9 acres. *These two water rights, in combination, represent a single beneficial use of water at the existing place of use—the irrigation of 53.9 acres.* If these two rights were separated or unstacked, the beneficial use associated with the water rights would double, because the acres being irrigated under the water rights would double. Water right 35-7667 [ground water right] and the ASCC shares [surface water entitlement] represent a single beneficial use of water (the irrigation of 53.9 acres) regardless of whether the acres have been irrigated with ground water, surface water, or both in the same irrigation season. The changes proposed in Application 83160 would

10

result in an enlargement of water right 35-7667 [ground water right] and must be denied pursuant to Idaho Code § 42-222(1).

(Italics added.)

The Final Order also concluded that the dispute over whether the ground water right should be considered a "primary" or "supplemental" water right (i.e., secondary to the surface water right) does not need to be resolved because the "enlargement analysis would be identical in either case." This is because the ground water right and the surface water right "each represented a full water supply for the irrigation of the existing 53.9-acre place of use, but the total combined beneficial use for the two sources has always been no more than 53.9 irrigated acres." If the transfer application is approved, the LLC would be authorized to exercise its "water rights in a way that will result in 107.8 acres being irrigated for the full irrigation season, instead of the 53.9 acres which are currently irrigated under the rights." Because the transfer application did not propose to divide the existing beneficial use between the ground water right and surface water entitlement, IDWR concluded "there is no need for an analysis of the historical primary or supplemental use under the rights."

On judicial review, the district court agreed, reiterating IDWR's position that approving the transfer would necessarily result in doubling the existing beneficial use as authorized between the stacked rights:

> Simply stated, the transfer would permit the Duffins to do what they cannot do now—use the full water supply under each overlapping water right at the same time for purposes of irrigation. The ability to use the full amount authorized under the ground water right for irrigation *even if* they are also irrigating the original place of use with their ASCC shares is an enlargement of the ground water right. Without the transfer, the Duffins would be precluded from using the ground water right in this fashion due to (1) the duty of water limit, and (2) the right's conditional remark. With the transfer, these limitations are removed, with the result that each right may be used simultaneously to irrigate 107.8 total acres as opposed to 53.9. Irrigating additional acres in this fashion would necessarily result in an increase in consumptive use and reduce return flows to the system. Therefore, the [c]ourt finds [IDWR] correctly concluded the proposed transfer would result in an enlargement in use of the ground water right. It follows the [Final Order] must be affirmed.

(Italics in original.)

We agree with the analysis and conclusion of the district court. The *Barron* theory of enlargement under section 42-222(1) controls and the district court correctly applied *Barron* in denying the transfer application. In this case, approving the transfer application would permit

11

concurrent use of the ground water right with the surface water right, allowing irrigation of 53.9 acres at two separate locations. Currently, the two rights may only irrigate 53.9 acres at one location. After transfer, the rights would double the number of irrigated acres. Accordingly, there would be an increase in total irrigated acres if the transfer were approved. This would result in an "enlargement" under Idaho Code section 42-222(1) and *Barron*. Thus, the transfer application was appropriately denied. The LLC's arguments to the contrary are unpersuasive.

1. The plain language of Idaho Code section 42-222(1) requires IDWR to examine the relationship between stacked water rights before authorizing a transfer.

The LLC's new theory of enlargement is contrary to the plain language of Idaho Code section 42-222(1). The plain language of section 42-222(1) requires IDWR to examine the *relationship* between stacked water rights that provide beneficial use to the same place of existing use when deciding whether transferring one of the stacked rights will result in an enlargement.

This Court exercises free review over statutory interpretation because it is a question of law. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). The standard for statutory interpretation is well-settled:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Melton v. Alt*, 163 Idaho 158, 162–63, 408 P.3d 913, 917–18 (2018) (quoting *Dunlap*, 155 Idaho at 361–62, 313 P.3d at 17–18).

Here, the LLC disputes *Barron*'s theory of "enlargement" by proposing a new interpretation of Idaho Code section 42-222(1). The statute provides in relevant part:

> Any person . . . . who shall desire to change the point of diversion, place of use, period of use or nature of use of all or part of the water, under the right shall first make application to the department of water resources for approval of such change . . . . The director of the department of water resources *shall examine all the evidence and available information* and shall approve the change in whole, or in part, or upon conditions, provided [1] no other water rights are injured thereby, [2] *the change does not constitute an enlargement in use of the original right*, [3] the change is consistent with the conservation of water resources within the state of

12

Idaho and [4] is in the local public interest as defined in section 42-202B . . . . The director may consider consumptive use, as defined in section 42-202B, Idaho Code, as a factor in determining whether a proposed change would constitute an enlargement in use of the original water right.

I.C. § 42-222(1) (italics added).

The LLC's interpretation suggests the statute's "original right" language limits IDWR's examination to only the language within the four corners of the license to be transferred when determining if approving a transfer will cause an enlargement. On the other hand, IDWR and the Coalition argue the LLC's interpretation fails to give effect to *all* the words in the statute and is contrary to the plain language of the statute. We agree with IDWR and the Coalition.

The transfer statute begins with an overarching requirement that IDWR "shall" examine or consider "all the evidence and available information" relevant to a transfer application. I.C. § 42-222(1). Indeed, IDWR is tasked with providing the transfer form that requests such relevant evidence and information from an applicant. *See id*. We cannot read the "original right" language in isolation as the LLC suggests. *See Melton*, 163 Idaho at 162–63, 408 P.3d at 917–18. Read as a whole, section 42-222(1) requires IDWR to consider whether transferring the "original right" will cause an enlargement "*in use*" of that right when considering "*all the evidence* and available information[.]" I.C. § 42-222(1) (italics added). This broad mandate is supported by Idaho's longstanding principle that individual water right holders cannot "waste" or "unnecessarily hoard" water without putting it to beneficial use. *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 880, 154 P.3d 433, 451 (2007). Consistent with Article XV, section 3, of the Idaho Constitution, it is well-settled that

no person can, by virtue of a prior appropriation, claim or hold more water than is necessary for the purpose of the appropriation, and the amount of water necessary for the purpose of irrigation of the lands in question and the condition of the land to be irrigated should be taken into consideration.

*Wash. State Sugar Co. v. Goodrich,* 27 Idaho 26, 44, 147 P. 1073, 1079 (1915); *see also* IDAHO CONST. art. XV, § 3.

Moreover, "all ground water pumpers impact all hydraulically connected surface water users in the same aquifer and [] all users of hydraulically connected surface water are hydraulically impacted by all ground water users." Gary S. Johnson, *Hydrologic Complications of Conjunctive Management*, 47 IDAHO L. REV. 205, 215 (2011). Thus, in examining "all the evidence" in a transfer application, IDWR must stay mindful of its duty to conjunctively manage the waters of

13

the Upper Snake River system and the ESPA. *See Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 796, 252 P.3d 71, 77 (2011). Indeed, "[c]onjunctive management of ground water and surface water rights is one of the main reasons for the commencement of the Snake River Basin Adjudication." *A & B Irr. Dist. v. Idaho Conservation League*, 131 Idaho 411, 422, 958 P.2d 568, 579 (1997).

From this, it follows that examining the relationship, if any, between the right to be transferred and any overlapping or stacked water rights is crucial to determining whether enlargement in consumptive use would occur as a result of a transfer (e.g., increase in total acres irrigated than before the transfer). This necessarily requires IDWR, consistent with *Barron*, to examine the relationship of the right to be transferred with other stacked rights before approving or denying a transfer application under Idaho Code section 42-222(1). The LLC's argument would tie IDWR's hands and prohibit the analysis that section 42-222(1) requires.

2. IDWR's transfer evaluation under Idaho Code section 42-222(1) did not collaterally attack the previously licensed ground water right.

The LLC next argues that allowing IDWR to read in new limits or conditions on a previously licensed water right during a transfer evaluation is an impermissible collateral attack on that licensed right. We disagree. In examining the interrelationship between the ground and surface water rights, the Final Order does impose a "single combined beneficial use" limit to describe the overlapping rights. However, this is not analogous to an impermissible collateral attack on a previously adjudicated or licensed water right.

In *American Falls Reservoir Dist. No. 2 v. Idaho Department of Water Resources*, we explained that imposing new conditions or limits when evaluating the relationship between water rights at issue in a delivery call is not a collateral "re-adjudication" of the water rights themselves. 143 Idaho at 876–77, 154 P.3d at 447–48. Adjudicating a water right determines, among other things, the water source, quantity, priority date, point of diversion, place, and period and purpose of use. *Id.* (citing I.C. § 42-1411(2)(a)–(j)). Conversely, the question presented in a delivery call, namely the "reasonableness" of a diversion in the administration of water rights, is not a re-adjudication of these elements because the "reasonableness" limit or condition is not one of the previously determined elements. *Am. Falls Reservoir Dist. No. 2*, 143 Idaho at 876–77, 154 P.3d at 447–48. We explained that a partial decree "need not contain information on how *each water*

14

*right* on a source physically interacts or affects *other rights on that same source*." *Id*. (Italics added.)

Here, the same reasoning applies. When IDWR imposes relationship-based conditions or limits on water rights in denying a transfer application, this is not a collateral re-adjudication of the water rights themselves. Like the unique question presented in a delivery call, the question presented in an enlargement evaluation cannot always be easily answered by, and is not necessarily part of, the elements of a water right as licensed or decreed. Thus, when IDWR reads in a "single combined beneficial use" limit on overlapping or stacked water rights in denying a transfer application—that is not a re-adjudication of the water right's elements. Such a limit is not an "element" of a water right as enumerated under Idaho Code section 42-1411(2)(a)–(j).

To be sure, sub-sections 42-1411(2)(i) and (j) indicate that "conditions" on the "exercise of any water right" or "remarks and other matters as are necessary for the definition of the right" should be included together with the water right elements listed in subsections (2)(a) through (h). However, such "conditions" typically relate to those elements already expressed on the license or decree. As in *American Falls*, a decree or license is not required to enumerate every possible condition or limitation as to how that water right does or does not interact with other water rights involving a subsequent transfer application. The LLC's four-corners theory of enlargement would essentially require IDWR to prophetically answer every question of enlargement on every license or decree before it is issued.

In support of its "four corners" theory and collateral attack argument, the LLC relies heavily on our decision in *City of Blackfoot v. Spackman*, 162 Idaho 302, 396 P.3d 1184 (2017). However, the LLC's reliance is misplaced. In *City of Blackfoot*, the city applied to appropriate a new diversion of groundwater. *Id*. at 304, 396 P.3d at 1186. To offset injury to other water rights holders resulting from a new appropriation, the city proposed to use mitigation credit resulting from seepage under its surface water right. *Id*. at 305, 396 P.3d at 1187. However, IDWR determined, and we agreed, that the city's decreed surface water right could not be used for mitigation credit because the decree did not list "recharge" as one of the right's purposes of use. *Id*. at 307, 396 P.3d at 1189. "[P]urpose of use" is a water right element listed under Idaho Code section 42-1411(2)(f) that must appear on the face of a decreed water right. *Id*. at 306–07, 396 P.3d at 1188–89. Changing this element, for example by adding a new purpose of use, requires a transfer application under Idaho Code section 42-222(1). *Id*. at 308, 396 P.3d at 1190. Accordingly, in *City*

15

*of Blackfoot*, we held that if the city wanted to use its surface water right for "recharge" in support of its appropriation application, the city had to first apply to change the right's purpose of use under section 42-222(1). *Id*. The city's attempt to add a new purpose of use element without this application, and without an appeal from the right at the time it was decreed, was an impermissible collateral attack on a conclusively decreed water right. *Id*.

In this case, as explained above, the "single combined beneficial use" limit imposed on stacked surface and ground water rights is not adding an "element" to the licensed ground water right. The limit is neither an element, nor a condition on an element under Idaho Code section 42-1411(2). Instead, the limit is the byproduct of evaluating the *relationship* between the overlapping ground and surface water rights during the transfer request process—a question that a four-corners analysis of *one* license or decree necessarily cannot answer. Accordingly, our holding in *City of Blackfoot* does not apply under these facts.

3. Contrary to the LLC's argument, the Transfer Memo is consistent with our interpretation of enlargement set out in *Barron* and supports the denial of the LLC's transfer application.

Finally, the LLC argues that the Transfer Memo was not given "considerable weight" as an agency interpretation of section 42-222(1). IDWR responds that the LLC's argument is foundationally flawed because the Transfer Memo is *consistent* with the theory of enlargement under *Barron*. Therefore, whether the Transfer Memo was not given "considerable weight" is immaterial because it does not support the LLC's "four-corners" theory of enlargement.

An agency interpretation may be afforded a particular level of deference based on our jurisprudence. *See Duncan v. State Bd. of Acct.*, 149 Idaho 1, 3, 232 P.3d 322, 324 (2010); *Preston v. Idaho State Tax Comm'n,* 131 Idaho 502, 504, 960 P.2d 185, 187 (1998); *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 862–63, 820 P.2d 1206, 1219–20 (1991). "Considerable weight" is one level of deference. *See J.R. Simplot Co.*, 120 Idaho at 862–63, 820 P.2d at 1219–20. However, here, even if the Transfer Memo is granted considerable weight, such weight militates in favor of denying the transfer application consistent with *Barron*.

The Transfer Memo contains an "Enlargement of Use" section providing guidance on how to evaluate a transfer application that proposes to change the place of use for a water right that is stacked with other water rights:

(3) Stacked Water Rights. Water rights are "stacked" when two or more water rights, generally of different priorities and often from different sources, are used for

16

the same use and overlie the same place of use. Water rights for irrigating a permissible place of use are not necessarily stacked when the water rights in total provide for irrigating up to the maximum acreage authorized within a permissible place of use. *An application for transfer proposing to "unstack" one or more water rights used for irrigation or other use, without changing all the rights for the same use, is presumed to enlarge the water right.* However, the place of use for a supplemental irrigation right may be changed for continued use as a supplemental irrigation right at a different place of use without, by definition, enlarging the original right or the supplemental right proposed for transfer, so long as the primary rights at the original and proposed places of use provide comparable water supplies. In other words, use of the supplemental right at the proposed place of use cannot materially exceed use of the supplemental right at the current place of use.

(Italics added.)

The Transfer Memo's presumption that unstacking overlapping water rights will result in an enlargement under section 42-222(1) is consistent with the enlargement theory we set out in *Barron*. Here, it is undisputed that the transfer application will result in a *doubling* in the number of irrigated acres. Consequently, like the analysis in *Barron*, and set out in the Transfer Memo, approving the transfer would result in an enlargement. The other sections in the Transfer Memo that the LLC points to do nothing to change this result or analysis. Accordingly, we agree with IDWR that whether the Transfer Memo was given "considerable weight" is immaterial because it does not support the LLC's "four-corners" theory of enlargement.

## B. Approving the transfer application would cause injury to other water rights holders.

After the enlargement issue, the district court only reached, and affirmed, the conclusions in the Final Order that (1) the proposed transfer would result in injury to other water rights holders; and (2) denying the transfer would not prejudice Duffin's substantial rights. (Duffin was still the real party in interest when the district court affirmed the Final Order.) We affirm.

First, "there is a *per se* injury to junior water rights holders anytime an enlargement receives priority." *A&B Irrigation Dist. v. Aberdeen–American Falls Ground Water Dist.*, 141 Idaho 746, 753, 118 P.3d 78, 85 (2005). "Priority in time is an essential part of western water law and to diminish one's priority works an undeniable injury to that water right holder." *City of Pocatello v. Idaho*, 152 Idaho 830, 835, 275 P.3d 845, 850 (2012) (quoting *Jenkins v. Idaho Dep't of Water Res.*, 103 Idaho 384, 388, 647 P.2d 1256, 1260 (1982)). Here, as explained above, transferring the ground water right would cause an enlargement. Thus, the district court correctly affirmed the

17

conclusion in the Final Order that approving the transfer application would *per se* injure other existing water rights.

Second, to prevail on judicial review of an agency action, a party must establish that the agency erred for one of the reasons provided under Idaho Code section 67-5279(3), *and* that such error(s) resulted in at least one of the complaining party's "substantial rights" being prejudiced. *See* I.C. § 67-5279(4). The use of "and" in the statute means that this test is conjunctive. *See Hungate v. Bonner Cnty.*, 166 Idaho 388, 393–94, 458 P.3d 966, 971–72 (2020). Here, the LLC did not show IDWR acted in violation of any statutory provisions or in excess of its statutory authority under Idaho Code section 67-5279(3). The LLC failed to show the transfer would not result in an enlargement or injury to other water rights, and IDWR was within its statutory authority to deny the LLC's application under Idaho Code section 42-222(1). Accordingly, we need not reach whether the denial prejudices the LLC's substantial rights. *See Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 812, 367 P.3d 193, 207 (2016) (affirming the district court's decision that IDWR did not err under section 67-5279(3) without ever reaching whether Rangen's substantial rights were prejudiced).

## C. IDWR and the Coalition are entitled to costs as prevailing parties on appeal, but not their attorney fees.

Both IDWR and the Coalition request attorney fees as the prevailing parties on appeal under Idaho Code section 12-117(1). The Coalition also requests attorney fees under Idaho Code section 12-121. For the reasons set forth below, we grant IDWR and the Coalition their costs, but we deny them attorney fees on appeal.

Section 12-117(1) provides in relevant part:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency . . . and a person, . . . the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees . . . if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1).

IDWR argues it is entitled to fees under section 12-117(1) because the LLC has not raised an issue of first impression; has not made a facially plausible legal argument; and has no reasonable basis to doubt *Barron*'s interpretation of "enlargement" under Idaho Code section 42-222(1). The Coalition, relying on *Rangen, Inc. v. Idaho Department of Water Resources*, 159 Idaho 798, 367

18

P.3d 193 (2016), maintains that attorney fees are appropriate because the LLC has "advanced ostensibly the same, failed arguments at every turn." The LLC responds that fees are not appropriate because they have presented a "legitimate question for this Court to address." In particular, the LLC points out that this is the first time IDWR has been challenged on its practice of imputing a "single combined beneficial use" limit against stacked water rights during a transfer evaluation—an issue that is not dictated by statute or explained by rule.

In *Rangen*, this Court set out a standard for granting fees to the prevailing party under Idaho Code section 12-117(1). 159 Idaho at 812, 367 P.3d at 207. Quoting our decision in *Castringo v. McQuade*, 141 Idaho 93, 98, 106 P.3d 419, 424 (2005), *Rangen* explained that fees are appropriate when the nonprevailing party "continued to rely on the same arguments used in front of the district court, without providing any additional persuasive law or bringing into doubt the existing law on which the district court based its decision." 159 Idaho at 812, 367 P.3d at 207. Applying this standard, and without examining whether the substance of Rangen's arguments were unreasonable, we awarded fees because Rangen "asserted substantially the same arguments on appeal as it did before the district court on judicial review and failed to add significant new analysis or authority to support its argument." *Id*. In other words, repeating the same arguments on appeal, regardless of their basis in law or fact, was enough to conclude Rangen was acting without any "reasonable basis in fact or law." *Id*. We now distinguish the *Rangen* standard because it is inconsistent with the plain language set out in Idaho Code section 12-117(1).

Section 12-117(1) permits an award of fees only if the nonprevailing party "acted without a reasonable basis in fact or law." Determining whether the nonprevailing party had a "reasonable" argument in law requires, at a minimum, examining the legal arguments made, i.e., the *substance* of the nonprevailing party's arguments. When it comes to questions of law, like the one presented in this case, an argument is not "unreasonable" under section 12-117(1) simply because it was repeated on appeal after being rejected by the agency and district court below. Moreover, even if the nonprevailing party does not provide new authority in support of its repeated legal argument— this has no connection to whether the argument has a "reasonable" basis in law.

Holding otherwise, and continuing the *Rangen* standard, places a higher burden on litigants seeking to challenge questions of law—which this Court reviews *de novo*—than the language of section 12-117(1) supports. The *Rangen* standard incorrectly renders every nonprevailing legal argument *per se* unreasonable, regardless of its merits, if it is repeated from the agency level

through to this Court. Moreover, the *Rangen* standard discourages litigants from challenging conclusions of law made by agencies because doing so *would* require litigants to repeat the same legal argument until they receive a final answer from this Court. Discouraging litigants from challenging the legal conclusions of an executive agency necessarily stunts our power to effectuate *de novo* review and determine what the law is with finality. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *see also Mead v. Arnell*, 117 Idaho 660, 669, 791 P.2d 410, 419 (1990) ("The Constitution gives both the power and a clear directive to this Court to interpret the law and to determine what administrative rules 'do or do not conflict with statutory law.'").

The reason for awarding attorney fees under section 12-117(1) in *Castringo*, on which *Rangen* relies, was that the nonprevailing party failed to follow well-defined "statutory procedures" for appealing separate appraisals. *See* 141 Idaho at 98, 106 P.3d at 424. Although we noted in *Castringo* that the nonprevailing party repeated the same arguments on appeal as made below, this merely buttressed our decision to award fees. Instead, our decision focused on the substance of the nonprevailing arguments to conclude they had no "reasonable basis" in law because statutory procedure *clearly* dictated the result of the case and supported the district court's decision. *See id.* We return to the standard used in *Castringo* as consistent with the preconditions for awarding fees under section 12-117(1). The reasonableness of a challenge to an agency's conclusions of law, when considering fees under section 12-117(1), turns on the substance of the nonprevailing party's legal arguments—not on whether the arguments were merely repeated or repackaged from below.

In this case, there is no definition of "enlargement" by statute or administrative rule. Moreover, IDWR has not promulgated any rules setting out how it will deal with transfer applications under Idaho Code section 42-222(1) that seek to unstack overlapping water rights. IDWR has issued a Transfer Memo describing a presumption of "enlargement" when unstacking water rights, but this is a non-binding interpretation of section 42-222(1). It does not have the "force of law" on the issue of unstacking and enlargement like the procedure provided by statute in *Castringo*. *See Asarco Inc. v. State*, 138 Idaho 719, 723, 69 P.3d 139, 143 (2003) ("[A]n agency action characterized as a rule must be promulgated according to statutory directives for rulemaking in order to have the force and effect of law."). Although *Barron* provides the correct "enlargement" analysis, the LLC is correct that IDWR's action of imputing a "single combined beneficial use"

20

limit against a fully licensed water right—that does not expressly contain such a limit—has never been specifically addressed by this Court. Although the LLC has not prevailed, it is reasonable to argue that imposing such a limit during a transfer evaluation is an impermissible collateral attack on a fully licensed water right contrary to our decision in *City of Blackfoot*.

Legal challenges to the conclusions of law made by an agency, when not preordained by statute, case law, or rule, is a healthy impetus to motivating agencies into promulgating more helpful and gap-filling rules. As the LLC explains, "[t]he resolution of the issues raised in this appeal [is] important because it will provide clear answers for the regulated community and the attorneys and consultants that represent them." While the LLC's legal arguments did not prevail, the LLC still brought an appeal that had a reasonable basis in law. Accordingly, IDWR and the Coalition are not entitled to attorney fees under Idaho Code section 12-117(1).

Furthermore, we deny the Coalition's request for attorney fees under Idaho Code section 12-121. Attorney fees under section 12-121 are available in civil actions where a complaint is filed—not in proceedings initiated by a petition for judicial review of an agency's final order. I.C. § 12-121; *Travelers Ins. Co. v. Ultimate Logistics* (*In re Idaho Workers Comp. Board*)*, LLC*, 167 Idaho 13, 24, 467 P.3d 377, 388 (2020). Here, the LLC's appeal originates from Duffin's petition for judicial review of a final order from IDWR denying Duffin's transfer application. A complaint did not initiate this case. Thus, the Coalition is not entitled to attorney fees under section 12-121.

## IV.    CONCLUSION

We affirm the district court's judgment that IDWR was within its statutory authority, and did not violate any statutory provisions, when it denied Transfer Application 83160. As IDWR and the Coalition are the prevailing parties on appeal, they are entitled to costs as a matter of course under Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices MOELLER, ZAHN, and HORTON, J. Pro Tem, CONCUR.

21