# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50000-2022

JAMES WHITTAKER, an individual; and
WHITTAKER TWO DOT RANCH LLC, an
Idaho limited liability company,

    Petitioners-Respondents on Appeal,

v.

IDAHO DEPARTMENT OF WATER
RESOURCES, an administrative agency of
the State of Idaho,

    Respondent,

and

BRUCE and GLENDA MCCONNELL,

    Intervenors-Appellants.

IN THE MATTER OF APPLICATION FOR
TRANSFER NO. 84441 IN THE NAME OF
BRUCE AND GLENDA MCCONNELL.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2023 Term

Opinion filed: June 27, 2024

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION, THE
OPINION DATED FEBRUARY
2, 2024, IS WITHDRAWN

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Lemhi County. Eric J. Wildman, District Judge.

The decision of the district court is <u>reversed</u>.

McHugh Bromley, PLLC, Boise, for Intervenors-Appellants Bruce and Glenda McConnell. Chris M. Bromley argued.

Holden Kidwell Hahn & Crapo, Idaho Falls, for Petitioners-Respondents James Whittaker and Whittaker Two Dot Ranch LLC. Robert L. Harris argued.

---

ZAHN, Justice.

This case concerns Bruce and Glenda McConnell's water right transfer application seeking authorization for a second point of diversion from Lee Creek. The Director of the Idaho Department of Water Resources approved the transfer application after using the historic

confluence to determine the transfer would not injure upstream water users. The district court set aside the Idaho Department of Water Resources' decision and remanded the matter for further proceedings, holding that the Director erred by using the historic confluence instead of the modern confluence to evaluate whether the approval of the McConnells' transfer application would injure other water users. After using the modern confluence in its injury analysis, the district court concluded that approving the transfer application would injure James Whittaker's water rights. We conclude that the district court erred in using the modern confluence for the injury analysis and therefore reverse the district court's decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Bruce and Glenda McConnell purchased real property adjacent to Lee Creek in 1993. The McConnells own seven water rights associated with the property, which altogether authorize the diversion of 15.2 cubic feet per second ("cfs") from Lee Creek via a single point of diversion— referred to as the "Upper Diversion." These water rights have priority dates between 1883 and 1909. Between 1993 and 2020, the McConnells also used a second point of diversion to divert water from Lee Creek, which was located downstream of the Upper Diversion—referred to as the "Lower Diversion."

Lee Creek is a tributary stream that flows from south to north. Porcupine Creek (also known as the Right Fork of Lee Creek) and Stroud Creek flow together to form the main stem of Lee Creek. Porcupine Creek runs roughly parallel and to the west of Stroud Creek until the two converge together to form Lee Creek. Based on exhibits contained in the record on appeal, this Court created a map with the approximate locations of the critical landmarks relevant to this opinion. The map is for illustrative purposes only and does not precisely reflect the actual location of the critical landmarks for the case.


*[the remainder of this page intentionally left blank]*


2



In 2020, the McConnells ceased using the Lower Diversion in response to an enforcement action by the Idaho Department of Water Resources ("IDWR"). The local water master informed the McConnells that their use of the Lower Diversion was unauthorized because the McConnells failed to claim the Lower Diversion as a diversion point in the Snake River Basin Adjudication

("SRBA"). The McConnells are unable to divert the full amount of their water right utilizing only the Upper Diversion. The McConnells subsequently filed an application for transfer no. 84441 ("Application 84441"), requesting that IDWR add the Lower Diversion as an authorized point of diversion to the McConnells' seven water rights.

James Whittaker and Whittaker Two Dot Ranch LLC (collectively "Whittaker"), the McConnells' upstream neighbor, protested Application 84441. Whittaker owns water right 74-157, which authorizes the diversion of 3.2 cfs from the West Springs, a small tributary created by a series of springs located near Stroud Creek. Water from the West Springs flows into Stroud Creek and eventually into Lee Creek. Water right 74-157 has a priority date of 1916, and is therefore junior in priority to the McConnells' water rights.

The history of the Lee Creek watershed is key to understanding the basis for the hearing officer's and the district court's decisions in this matter. Historically, water flowed through Stroud Creek's natural stream channel until it converged with Porcupine Creek to form the main stem of Lee Creek. The historical confluence of Porcupine Creek and Stroud Creek was located above the McConnells' Upper Diversion.

Beginning in 1916, Whittaker's predecessor diverted water from the West Springs via a flume over Stroud Creek, but the flume failed in 1932. Following the flume's failure, Whittaker's predecessor and the McConnells' predecessor entered into an oral agreement in 1932 that allowed Whittaker's predecessor to construct a ditch across Stroud Creek in place of the failed flume. This ditch is now called the West Springs Ditch. In return, Whittaker's predecessor permitted the McConnells' predecessor to build a ditch to divert water from Stroud Creek and redirect it to Porcupine Creek. This ditch became known as the Kauer Ditch and diverted the full amount of water that the McConnells' predecessor was entitled to under their water rights. The diverted water was transferred into Porcupine Creek and was carried downstream to Lee Creek, from where the McConnells diverted the water and put it to beneficial use.

Since 1932, the West Springs Ditch has captured and diverted onto the Whittaker property both the water from the West Springs tributary and any excess water in Stroud Creek that made it past the Kauer Ditch. Any water that is not used by Whittaker is eventually returned to Lee Creek via a system of canals and ditches—the primary of which is the Bohan Ditch. Except for high flows, water from Stroud Creek has not flowed in its natural channel between the West Springs Ditch and the historic confluence with Lee Creek since 1932 due to the West Springs Ditch.

4

In 1956, this Court had occasion to discuss the agreement that resulted in the construction of the Kauer Ditch and the West Springs Ditch. In *Whittaker v. Kauer*, 78 Idaho 94, 95, 298 P.2d 745, 746 (1956) ("*Kauer*"), Whittaker's predecessor sought to quiet title to water from the West Springs, resulting in a judicially decreed water right of eighty miner's inches of water from the West Springs. Our opinion discusses the agreement between the McConnells' predecessor and Whittaker's predecessor. *Id*. at 97, 298 P.2d at 747. We described the oral agreement between Whittaker's predecessor and the McConnells' predecessor as permitting Whittaker's predecessor to build the West Springs Ditch to "capture all waters found flowing in [Stroud] creek at that place." *Id.* (emphasis omitted). In exchange, the McConnells' predecessor received a right of way to build the Kauer Ditch to divert Stroud Creek water. *Id.*

In 1987, the Snake River Basin Adjudication commenced. The SRBA was a decades-long general stream adjudication to decide the nature, extent, and priority of all water rights in the Snake River basin, which included Stroud Creek and Lee Creek. All water right holders in the Snake River basin were required to claim the scope of their water right or lose their water right. Claims had to include the name and address of the claimant, the source of water, the quantity of water, the date of priority, the water right number, the purpose and period of use, points of diversion, and the legal description of the place of use. I.C. § 42-1409. The McConnells claimed 15.2 cfs of water from Lee Creek in the SRBA but failed to list the Kauer Ditch and the Lower Diversion as diversion points for their decreed water right. Whittaker claimed 4.4 cfs of water from Stroud Creek[1] and 3.2 cfs of water from the West Springs. The Whittakers identified the diversion point for the West Springs water as the West Springs Ditch.

As a result of a 2014 enforcement action by IDWR, the McConnells lost their ability to divert water via the Kauer Ditch because they failed to claim the diversion point in the SRBA. Previously, the McConnells fulfilled their water rights via the Kauer Ditch, which diverted water from Stroud Creek upstream of the West Springs Ditch and therefore did not impact Whittaker's right to divert the entire flow of the West Springs via the West Springs Ditch. The closure of the Kauer Ditch caused the water that was historically diverted to Porcupine Creek to continue to flow in Stroud Creek instead.

---

[1] Whittaker has an authorized diversion upstream of the West Springs Ditch that diverts the entire 4.4 cfs of water rights 74-369, 74-1136, and 74-15788. This diversion was claimed in the SRBA and is not at issue in this case.

5

Historically, Whittaker's West Springs Ditch was only used to divert water from the West Springs tributary and any excess water in Stroud Creek in high water years or during flood events. However, since 2014, the West Springs Ditch has been diverting the entire flow of Stroud Creek through Whittaker's property via Whittaker's system of ditches and channels. Whittaker diverts the water to which he is entitled, and his ditches return the remaining water into Lee Creek below the McConnells' Upper Diversion. The McConnells' transfer application seeks to add a second point of diversion to access the water they historically diverted from Stroud Creek via the Kauer Ditch, but which now runs through Whittaker's property via the West Spring Ditch.

Whittaker protested the McConnells' Application 84441 to add the Lower Diversion point because Whittaker is concerned that the additional diversion point will injure Whittaker by giving the McConnells administrative access to water right 74-157. This concern arises from the fact that the McConnells' water rights are senior to Whittaker's water right 74-157, and Whittaker is concerned that adding the Lower Diversion will allow the McConnells to call for water from his water right 74-157 in times of shortage.

## B. Procedural Background

### 1. *The course of proceedings before the IDWR*

The Director of the Idaho Department of Water Resources ("Director") is authorized to approve the transfer of water rights if, among other factors, the transfer will not injure other water rights users (referred to as an "injury analysis"). I.C. § 42-222(1). After holding an administrative hearing, an IDWR hearing officer determined the transfer would not injure Whittaker's water right and approved the McConnells' Application 84441 to add the Lower Diversion as a diversion point. The hearing officer determined that the critical question in determining whether the transfer would injure Whittaker's water right was the location of the confluence of Stroud Creek and Porcupine Creek. If the confluence is located above the Upper Diversion, then Whittaker's upstream water right is already subject to the McConnells' senior priority rights and the transfer would not injure Whittaker. In contrast, if the confluence is below the Upper Diversion, then the transfer would harm Whittaker by giving the McConnells administrative access to Whittaker's water right 74-157.

The hearing officer found that the historic confluence was located upstream of the Upper Diversion but has been dry since 1932. We refer to this as the "historic confluence." However, the hearing officer also found that the diversion of Stroud Creek at the West Springs Ditch through

6

Whittaker's ditch system results in the current flow of Stroud Creek returning to Lee Creek below Upper Diversion. We refer to this as the "modern confluence."

The hearing officer further found that the West Springs Ditch is an unauthorized diversion of Stroud Creek by Whittaker, and, but for this unauthorized diversion, the waters of Stroud Creek would have met with the waters of Porcupine Creek at the historic confluence. As a result, the hearing officer found that the historic confluence was the proper confluence to use for the injury analysis. Because the historic confluence was located above the Upper Diversion, it found no injury to Whittaker's water right 74-157 and approved the transfer.

Whittaker filed a petition for reconsideration, arguing that the hearing officer's decision to use the historic confluence was arbitrary and capricious and unsupported by substantial evidence because the West Springs Ditch altered the original channel and resulted in the channel flowing into Lee Creek below the McConnells' Upper Diversion. The hearing officer denied Whittaker's petition to reconsider after rejecting Whittaker's argument that a ditch can be converted into a natural channel. The hearing officer found that a 1989 USGS Map and a 1954 Engineer's Map show that Stroud Creek historically entered Lee Creek above the McConnells' Upper Diversion.

Whittaker then filed exceptions to the preliminary order with the Director, arguing that the Director should either approve Application 84441 with a subordination condition for Whittaker's water right 74-157 or remand the matter for further proceedings. The Director denied Whittaker's exceptions and adopted the hearing officer's preliminary order approving the transfer as a final order. The Director found the hearing officer relied on substantial and competent record evidence to conclude the historic confluence was the correct confluence to use in the injury analysis. Additionally, the Director found that, but for the unauthorized diversion by the West Springs Ditch, Stroud Creek would still flow through the historic confluence. Whittaker timely filed a petition for judicial review of the Director's decision with the district court.

2. *The course of proceedings before the district court*

In the district court, Whittaker argued that the Director erred by basing his injury analysis on the historic confluence instead of the modern confluence and that the West Springs Ditch is an authorized diversion under this Court's decision in *Kauer*, 78 Idaho 94, 298 P.2d 745. The McConnells argued that the Director used substantial and competent evidence in the record in deciding to use the historic confluence for the injury analysis and that Whittaker failed to properly claim the West Springs Ditch as a point of diversion in the SRBA.

7

The district court set aside the Director's order approving the transfer and remanded the matter for further proceedings. The district court found that the legality of the diversion by the West Springs Ditch was not at issue before the Director. Relying on this Court's decision in *Kauer*, the district court determined that the flow of Stroud Creek was altered by the agreement between the McConnells' predecessor and Whittaker's predecessor to construct the West Springs Ditch. The district court determined that the alteration of the stream flow was not an element of Whittaker's water right and therefore the agreement was not superseded by the SRBA. As a result, the district court found that the modern, actual confluence should be used for the injury analysis when evaluating Application 84441. Consequently, the district court determined that, because the modern confluence was below the Lower Diversion, approving Application 84441 would result in injury to Whittaker's water right 74-157. The district court held that Application 84441 could be approved subject to a condition subordinating the use of the McConnells' Lower Diversion to Whittaker's water right 74-157.

The McConnells timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court incorrectly substitute its own findings of fact for those of the hearing officer to determine the location of the confluence?

2. Did the district court err when it rejected the Director's determination that the location of the confluence must be based on the historic water course instead of the present flow of water?

3. Is Whittaker entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

The Idaho Administrative Procedure Act, title 67, chapter 52, Idaho Code ("the APA"), governs judicial review of a final decision or order of the Director of IDWR. I.C. § 42-1701A(1). Under the APA, an appellate court "shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions" are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) not supported by substantial evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

8

I.C. § 67-5279(3). "Even if one of these conditions is met, this Court will still affirm the agency action 'unless substantial rights of the appellant have been prejudiced.'" *A & B Irrigation Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 506, 284 P.3d 225, 231 (2012) (quoting I.C. § 67-5279(4)). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

"When reviewing an appeal from a district court's decision acting in its appellate capacity under the [APA], this Court reviews 'the decision of the district court to determine whether it correctly decided the issues presented to it'" and reverses or affirms the district court as a matter of procedure. *Rangen, Inc. v. Idaho Dep't of Water Res.*, 160 Idaho 251, 255, 371 P.3d 305, 309 (2016), *abrogated on other grounds by 3G AG LLC v. Idaho Dep't of Water Res.*, 170 Idaho 251, 509 P.3d 1180 (2022). "In an appeal from the decision of a district court acting in its appellate capacity under [the APA], we review the agency record independently of the district court's decision." *3G AG LLC*, 170 Idaho at 257, 509 P.3d at 1186. This Court will "not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1). "This Court 'instead defers to the agency's findings of fact unless they are clearly erroneous. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record.'" *A & B Irrigation Dist.*, 153 Idaho at 505–06, 284 P.3d at 230–31 (quoting *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000)). "However, we exercise *de novo* review over questions of law." *3G AG LLC*, 170 Idaho at 257, 509 P.3d at 1186.

## IV. ANALYSIS

The Director of IDWR shall approve a water right transfer application unless, among other factors, the transfer would injure other water right holders. I.C. § 42-222(1). At issue here is whether Application 84441 would injure Whittaker's water right 74-157. All parties agree that the critical issue in the injury analysis is the location of the confluence of Stroud Creek and Lee Creek. If the location of the confluence is found to be above the Upper Diversion, then the transfer would not injure Whittaker because Whittaker's upstream water right would already be subject to the McConnells' senior priority water rights. If the location of the confluence of Stroud Creek and Porcupine Creek is found to be below the Upper Diversion, then the transfer would give the

9

McConnells administrative access to Whittaker's water right 74-157 and Application 84441 should either be denied or approved subject to a subordination condition.

On appeal, the McConnells argue that the district court erred by substituting its own findings of fact for those of the Director in determining the location of the confluence to use for the injury analysis. They appear to argue that the determination of which confluence to use in the injury analysis is an issue of fact. They argue that there was substantial evidence in the record to support the Director's decision to rely on the historic confluence for the injury analysis and the district court erred when it relied on the modern confluence for its injury analysis.

Whittaker argues that which confluence to use in the injury analysis is a legal question and that the district court correctly decided to use the modern confluence for the injury analysis. Whittaker additionally argues that the West Springs Ditch was authorized by this Court in *Kauer*, 78 Idaho 94, 298 P.2d 745.

As explained in more detail below, we conclude that the determination of which confluence to use in the injury analysis is a question of law. We also conclude that the district court erred in relying on the modern confluence in its injury analysis and, therefore, reverse the district court's decision setting aside the Director's order.

**A. The district court did not substitute its own factual findings for those of the agency.**

The McConnells' first point of error is that the district court erroneously substituted its own findings of fact concerning the modern confluence for those of the hearing officer. "[T]he agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *A & B Irrigation Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505–06, 284 P.3d 225, 230–31 (2012) (quoting *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000)). A review of the record demonstrates that this argument is unpersuasive. The hearing officer, the Director, and the district court recognized and agreed on the locations of the two confluences. They simply disagreed on which one should form the basis for the injury analysis.

The hearing officer found substantial and compelling evidence in the record that the historic confluence of Stroud Creek and Porcupine Creek was located upstream of the Upper Diversion, while also recognizing that water currently flowed through the modern confluence:

> Currently, water released from the Whittaker ditch system flows into Lee Creek below McConnell's [sic] Upper Diversion.
>
> . . . .

10

The record contains substantial, compelling evidence that the confluence of Stroud Creek and [Porcupine Creek] was once located . . . upstream of McConnell's [sic] Upper Diversion[.]

The Director also recognized the existence of two confluences:

The hearing officer relied on substantial evidence in the record . . . to conclude Stroud Creek would flow from the point of interception to the historic confluence but for the interception of Stroud Creek by Whittaker's West Springs Ditch.

. . . .

. . . The location of the confluence—whether above or below the McConnell's [sic] currently approved point of diversion—will affect how other Stroud and Lee Creek water rights may be administered in priority.

Finally, the district court recognized the existence of the historic and the modern confluences:

Historically, Stroud Creek flowed into Lee Creek at a point located upstream of the McConnells' Upper Diversion.

. . . .

The record establishes that Stroud Creek presently flows into Lee Creek below the McConnells' Upper Diversion.

The record reveals that, contrary to the McConnells' assertions on appeal, the district court did not make its own, conflicting findings of fact regarding the location of the confluence. Rather, the hearing officer, the Director, and the district court recognized and identified two confluences— the historic confluence and the modern confluence. Both the Director and the district court therefore operated from the same set of facts when conducting the injury analysis.

However, while the Director and the district court agreed that there were two confluences at issue, they disagreed on which confluence was the appropriate starting point for the injury analysis related to the McConnells' transfer application. The Director determined that the West Springs Ditch was an unauthorized, and therefore unlawful, diversion of water. However, the district court determined that the West Springs Ditch was an alteration of the stream flow of Stroud Creek and therefore did not constitute an unlawful diversion. The district court's determination that the West Springs Ditch was not an unlawful diversion caused it to conclude that the modern confluence represented the existing flow of Stroud Creek and therefore was the appropriate starting point for the injury analysis. The difference involves a question of law, not one of factual findings. *See* I.C. § 42-351(1) (stating that it is unlawful for any person to divert water from a natural watercourse without having obtained a valid water right to do so). Accordingly, we reject the

11

McConnells' argument that the district court erred by substituting its own findings for those of IDWR.

**B. The West Springs Ditch is a diversion of Stroud Creek rather than an alteration of the flow of Stroud Creek.**

The Director characterized the West Springs Ditch as an unauthorized diversion of Stroud Creek, while the district court characterized the West Springs Ditch as an alteration of the flow of Stroud Creek. This distinction is significant. If the West Springs Ditch is a diversion, then it needed to be claimed as a point of diversion in the SRBA or else it is an unauthorized diversion of the waters of Stroud Creek. If the West Springs Ditch is an alteration of the flow of Stroud Creek, then it did not need to be claimed in the SRBA and the alteration of the flow is lawful. This difference is significant when determining whether the historic confluence or the modern confluence governs the injury analysis in this case. This case thus requires us to examine the differences between a diversion and an alteration.

Our caselaw from the beginning of the twentieth century demonstrates that man-made constructs, including ditches, used to redirect water from one location to another were generally understood to be diversions. *See Wood River Power Co. v. Arkoosh*, 37 Idaho 348, 215 P. 975 (1923) (referring to "ditch" as the "point of diversion"); *Basinger v. Taylor*, 30 Idaho 289, 293, 164 P. 522, 522 (1917) (noting that appellants "had diverted their water from said Dry creek, across low land and gravel bars, through a ditch"); *Willson v. Boise City*, 20 Idaho 133, 138, 142–43, 117 P. 115, 116 118 (1911) (referring to an artificial channel created by the city as a diversion); *Harsin v. Pioneer Irrigation Dist.*, 45 Idaho 369, 377–78, 263 P. 988, 991 (1927) (referring to a lateral within a canal as a diversion). This Court first defined "diversion" in 1980. A diversion of water is when "water flows in a different channel than it would have done absent intervention by the appropriator." *Hidden Springs Trout Ranch, Inc. v. Hagerman Water Users, Inc.*, 101 Idaho 677, 680, 619 P.2d 1130, 1133 (1980).

In contrast, this Court has described the alteration of a stream as including cutting the banks and removing vegetation so logs could more easily be floated down the stream. *Mashburn v. St. Joe Improvement Co.*, 19 Idaho 30, 34–35, 113 P. 92, 93 (1910). In that case, this Court did not directly define what constituted an "alteration" of a stream channel but affirmed a state agency permit allowing for the alteration of a stream by enlarging the stream. In 1971, the Idaho Legislature first defined "alter" in the context of a stream alteration as an act to "obstruct, diminish, destroy, alter, modify, relocate, or change the natural existing shape or direction of water flow of

any stream channel within or below the mean high watermark thereof." S.B. 1119, 41st Leg., 1st Reg. Sess., 1971 Idaho Sess. Laws 1304, 1305 (codified at I.C. § 42-3802(b)).

We hold that the West Springs Ditch constitutes a diversion of water, rather than an alteration to the flow of the stream channel. The West Springs Ditch is diverting water from Stroud Creek into a man-made ditch, which is a different channel than it would have followed absent the man-made intervention. Our discussion in *Kauer* concerning the agreement to construct the West Springs Ditch also suggests that Whittaker's predecessor and the McConnells' predecessor understood the ditch to be a diversion. In *Kauer*, we described the West Springs Ditch as a ditch to "*capture all waters* found flowing in [Stroud] creek at that place." 78 Idaho at 97, 298 P.2d at 747 (emphasis added). The capturing of "all waters" of a creek is consistent with this Court's definition of what constitutes a diversion. *See Hidden Springs Trout Ranch, Inc.*, 101 Idaho at 680, 619 P.2d at 1133.

The West Springs Ditch goes a step further than an alteration by diverting Stroud Creek from its natural course and directing it into Whittaker's private system of canals and ditches. Idaho Code section 42-3802(d) explicitly excludes ditches from the definition of stream channels. I.C. § 42-3802(d) ("Ditches, canals, laterals and drains that are constructed and used for irrigation or drainage purposes are not stream channels."). An alteration would have involved modifications to the stream channel itself. Instead, the West Springs Ditch moves the water out of the stream channel and sends it through a series of man-made constructs. That is a diversion of water.

Our conclusion that Whittaker's predecessor did more than just alter the course of Stroud Creek is supported by our opinion in *Mashburn*. In that case, we affirmed a state agency permit allowing for the alteration of a stream by enlarging the stream, cutting the banks, and removing vegetation so logs could more easily be floated down the stream. 19 Idaho at 34–35, 43, 113 P. at 93, 96. Our characterization in 1910 of an alteration as enlarging the stream, cutting the banks, and removing vegetation suggests something different than what Whittaker's predecessor did with the West Springs Ditch. Rather than alter the actual stream channel itself, Whittaker's predecessor constructed a separate structure that removed the water from the stream channel.

Further, nothing in the record suggests that the West Springs Ditch constitutes an alteration rather than a diversion. The district court cited our decision in *Kauer* to describe the West Springs Ditch as an alteration. However, *Kauer* did not address the distinction between an alteration and a diversion. While *Kauer* did describe an oral agreement to build the West Springs Ditch, at no point

13

did we describe the West Springs Ditch as an alteration. Instead, the West Springs Ditch falls squarely within our definition of diversion and is consistent with our decisions from the early twentieth century concluding that similar constructs constituted diversions.

On appeal, Whittaker argues we should ignore the statutory definition of stream channel in section 42-3802(d) and instead look to IDAPA 37.03.07.010.15, which defines a stream channel as the channel "at the present time, regardless of where the channel may have been located at any time in the past." However, the definitions found under IDAPA 37.03.07.010.15 are limited to stream alteration applications. *See* IDAPA 37.03.07.000 ("The purpose of these rules and minimum standards is to specify procedures for processing and considering applications for stream channel alterations under the provisions of Title 42, Chapter 38, Idaho Code."). The definitions utilized in connection with a stream alteration application are inapplicable to a water right transfer application under Idaho Code section 42-222.

We hold that the West Springs Ditch is a diversion of water from Stroud Creek. Because it is man-made and captures all waters from Stroud Creek, the West Springs Ditch does not constitute an alteration of the channel of Stroud Creek, regardless of how much time has passed since the diversion was constructed.

## C.  The West Spring Ditch is an unauthorized diversion.

Having determined that the West Springs Ditch is a diversion, we must next determine if the West Springs Ditch is an *unauthorized* diversion. If the West Springs Ditch is an unauthorized diversion, then the waters of Stroud Creek should continue flowing past the West Springs Ditch to the historic confluence, and the Director was correct in determining that the historic confluence is the correct confluence to use in determining injury to Whittaker's water right 74-157. However, if the West Springs Ditch is an authorized diversion, then the modern confluence should be used in the injury analysis.

The Director found the West Springs Ditch to be an unauthorized diversion of Stroud Creek. The Court "defers to the agency's findings of fact unless they are clearly erroneous. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *A & B Irrigation Dist.*, 153 Idaho at 505–06, 284 P.3d at 230–31 (quoting *Urrutia*, 134 Idaho at 357, 2 P.3d at 742 (2000)).

14

We conclude that there is substantial competent evidence in the record to support the Director's finding that the West Springs Ditch is an unauthorized diversion of Stroud Creek. "Water rights are defined by elements." *City of Blackfoot v. Spackman*, 162 Idaho 302, 306, 396 P.3d 1184, 1188 (2017). The legal description of the point of diversion is an element of a water right. I.C. § 42-1411(2)(e). "No person shall divert any water from a natural watercourse or apply water to land without having obtained a valid water right to do so[.]" I.C. § 42-201(2). The SRBA Final Unified Decree is "'conclusive as to the nature and extent of all water rights within the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987' and is 'binding against all persons.'" *In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho 241, 245, 429 P.3d 129, 133 (2018) (quoting Final Unified Decree at 9, 11, *In re SRBA*, No. 39576 (SRBA D. Ct. Idaho Aug. 26, 2014); and citing I.C. § 42-1420(1)).

On April 3, 2012, the SRBA district court issued a partial decree for Whittaker's water right 74-157. For the source of the water right, Whittaker's water right 74-157 lists only "Spring Tributary: Lee Creek." Whittaker concedes that water right 74-157 does not list the West Springs Ditch as a diversion point for Stroud Creek and only authorizes a diversion of the West Springs.

The district court held that there was no evidence that the West Springs Ditch was an unauthorized diversion. While it is true that the status of the West Springs Ditch was not expressly litigated in connection with the agency's evaluation of the McConnells' transfer application, we conclude that the record contains substantial and competent evidence that the West Springs Ditch is an unauthorized diversion. The SRBA Final Unified Decree is "conclusive as to the nature and extent of all water rights within the Snake River Basin . . . ." *In re SRBA Case No. 39576 Sub[c]case No. 37-00864*, 164 Idaho at 245, 429 P.3d at 133 (quoting Final Unified Decree at 9). Whittaker's water right 74-157 only lists "Spring Tributary: Lee Creek" as the source of Whittaker's water right. Nowhere on the face of water right 74-157 does Whittaker have the right to divert Stroud Creek water. Whittaker presented no evidence before the agency that the West Springs Ditch is an authorized point of diversion from Stroud Creek.

Whittaker argues that the West Springs Ditch was never intended to divert the waters of Stroud Creek, only the water from the West Springs, and therefore it cannot constitute an unauthorized diversion. However, the determination of whether a diversion is authorized does not turn on the parties' intent. In the absence of any evidence that the West Springs Ditch was claimed

15

in the SRBA as an authorized point of diversion for the waters of Stroud Creek, the ditch is an unauthorized diversion.

The dissent argues that, by holding that the West Springs Ditch is an unauthorized diversion, we are allowing water right decrees entered by the SRBA district court to overrule our opinion in *Kauer*. There are two problems with the dissent's assertion. First, *Kauer* does not decree the West Springs Ditch as an authorized diversion. Rather, *Kauer* recognized that Whittaker's predecessor built the West Springs Ditch pursuant to a private agreement with the McConnells' predecessor.

Second, even if our decision in *Kauer* had held that the West Springs Ditch was an authorized diversion, Whittaker lost legal authority to utilize the West Springs Ditch as a diversion when Whittaker failed to claim it in the SRBA. The SRBA was authorized by statute and approved and overseen by this Court as the final adjudication of the water rights in the Snake River Basin. *See* H.B. 70, 48th Leg., 1st Reg. Sess., 1985 Idaho Sess. Laws 27–31; H.B. 267, 48th Leg., 1st Reg. Sess., 1985 Idaho Sess. Laws 286–88; *see In re Snake River Basin Water Sys.*, 115 Idaho 1, 764 P.2d 78 (1988); I.C. § 42-1408 (1986) (requiring the Idaho Supreme Court to assign a judge to preside over the SRBA and determine the venue).

The SRBA Final Unified Decree found that claimants in each of the SRBA basins received notice of the commencement of the SRBA in accordance with chapter 14, title 42, Idaho Code, and orders of the SRBA court. Final Unified Decree at 9 ¶ 11. The Final Unified Decree goes on to conclude that "[t]his Final Unified Decree is conclusive as to the nature and extent of all water rights within the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987, except the following described water rights shall not be lost by failure to file a notice of claim, as provided in Idaho Code § 42-1420 (2003)[.]" *Id*. at 9 ¶ 1. Decisions of this Court, including our decision in *Kauer*, are not one of the excepted water rights described in the Final Unified Decree. The Final Unified Decree further held that, "[a]ll water rights with a priority before November 19, 1987, not expressly set forth in the Final Unified Decree are hereby decreed as disallowed." *Id*. at 10 ¶ 1. Thus, Whittaker's use of the West Springs Ditch as a point of diversion from Stroud Creek was disallowed under the Final Unified Decree because none of his water rights list it as an authorized point of diversion.

The dissent fails to cite any authority supporting its assertion that the Final Unified Decree does not apply to Whittaker's use of West Springs Ditch, or how our decision in *Kauer* trumps the

16

Final Unified Decree. The dissent's position would allow *Kauer* to abrogate the Final Unified Decree and upend the finality of the SRBA Adjudication. Similarly situated parties could search this Court's caselaw for any mention of their water right as a workaround to avoid the Final Unified Decree. This would negate the entire purpose of the SRBA Adjudication and essentially overrule the orders of the SRBA court, including the Final Unified Decree.

The dissent contends that this outcome is neither just nor equitable. However, there is no equitable road to avoid the finality of the SRBA. "All prior rights that were required to be claimed in the SRBA were superseded by the Final Unified Decree." *In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho at 253, 429 P.3d at 141; *see also* I.C. § 42-1420(1) (a general adjudication is "conclusive as to the nature and extent of all water rights in the adjudicated water system"). This Court has consistently rejected arguments to revisit water rights adjudicated in the SRBA for equitable concerns and we do so again here. *See Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 806, 367 P.3d 193, 201 (2016) (holding that "allowing a party to contest a partial decree outside of the SRBA would undermine any certainty or finality of the partial decree"), *abrogated on other grounds by 3G AG LLC v. Idaho Dep't of Water Res.*, 170 Idaho 251, 509 P.3d 1180 (2022); *see In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho at 253, 429 P.3d at 141 (holding that this Court would not set aside the SRBA for a party's mistaken assumption that they filed a claim in the SRBA). While a decision in the McConnells' favor may seem inequitable to Whittaker, and vice versa, it is the finality of the SRBA that guides our decision today.

In sum, we hold that there is substantial and competent evidence in the record to support the Director's conclusion that the West Springs Ditch is an unauthorized diversion of the waters of Stroud Creek because it is not identified as a point of diversion in Whittaker's water right 74-157.

## D. The historic confluence is the proper confluence to use for the injury analysis.

Having determined that the West Springs Ditch is an unauthorized diversion, we now turn to the injury analysis under Idaho Code section 42-222. But for the unauthorized diversion by the West Spring Ditch, Stroud Creek and Porcupine Creek would merge at the site of the historic confluence. As a result, we hold that the historic confluence is the appropriate confluence to consider in the injury analysis when evaluating Application 84441.

We acknowledge that the state of affairs today does not appear to be what Whittaker's and the McConnells' predecessors intended in 1932 when they agreed to the construction of the Kauer

17

and West Springs ditches. The dissent argues that our decision will unnecessarily alter an irrigation system that has been in place since 1932. However, we cannot escape the fact that the West Springs Ditch is a man-made ditch constructed across the bed of Stroud Creek that was not claimed as a diversion in the SRBA. While we recognize that it is a unique set of circumstances that brings us to where we are today, we cannot ignore our law concerning the distinctions between ditches and alterations to stream channels. Regardless of why the West Springs Ditch is now diverting the waters of Stroud Creek, the West Springs Ditch is an unauthorized diversion. As a result, the Director appropriately relied on the historical confluence when analyzing whether the McConnells' transfer application would injure other water users.

Finally, the dissent faults our decision for giving our "approval" to a new point of diversion for the McConnells that was previously unauthorized and shut down as a result of an enforcement action by the Department. Our decision today does nothing more than enforce the finality provisions of the SRBA Final Unified Decree and apply existing water law concerning the definition of a diversion for purposes of determining whether the historic confluence or the modern confluence governed the injury analysis related to the McConnells' application. We have simply decided the issues presented in this appeal and there is nothing untoward or unfair about doing so.

For the reasons discussed herein, we hold that the district court erred when it set aside IDWR's decision that the McConnells' transfer application would not injure other water users.

## E. Attorney Fees

Whittaker requests attorney fees pursuant to Idaho Code section 12-117(1), which awards reasonable attorney fees, witness fees, and other reasonable expenses to the prevailing party in an action adverse to a state agency if the Court finds that the nonprevailing party acted without a reasonable basis in fact or law. Given our decision today in favor of the McConnells, Whittaker is not the prevailing party on appeal and, therefore, is not entitled to attorney fees.

## V. CONCLUSION

For the foregoing reasons, we reverse the district court's memorandum decision and order. As the prevailing parties, the McConnells are awarded their costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN and Justice BRODY CONCUR.

MOELLER, J. dissenting.

In reversing the district court's decision, the majority relies upon an alternate reality—one that has not existed for over ninety years—and renders a decision that effectively abrogates our prior decision in *Whittaker v. Kauer*, 78 Idaho 94, 298 P.2d 745 (1956). As the district court aptly observed in setting aside and remanding the Director's decision, the majority opinion will cause "significant disruption to a system" that has served the parties and their predecessors since 1932. Sadly, this is an unnecessary disruption because, as the district court also found, it is "based on circumstances that do not exist." Because the majority's decision unsettles a long-settled situation for reasons untethered in reality, I must register my dissent.

Prior to 1932, major changes to Stroud Creek took place that are still in effect today. As found by the district court: "the present flow of Stroud creek is undisputed—it flows into Lee Creek below the McConnells' Upper Diversion." This was done pursuant to an agreement among the parties' predecessors to construct the West Springs Ditch, which "captures the entire flow of Stroud Creek." That very agreement and the changes it wrought were challenged—and ultimately recognized—by this Court in *Kauer*. In upholding the 1932 agreement, this Court explained:

> The findings of the trial court, hereinbefore referred to, show that the waters of the West Springs have been used by respondents' predecessors and by respondents continuously since some time prior to the entry of the July 1, 1912 decree; also that commencing with the year 1932, pursuant to and upon consummation of the contract referred to, the predecessors of appellants allowed respondents to capture all the waters of the Left Fork found flowing in the Creek at the place where, pursuant to the contract respondents constructed said dam below appellants' newly designated upstream point of diversion, and such waters so captured by respondents included the waters of the West Springs.
>
> The conclusion is inescapable also, that appellants' predecessors had knowledge of respondents' use of the waters of the West Springs, inasmuch as appellants' predecessors consented to the damming of the Left Fork by respondents at the place where, since prior to or about the year 1912, the flume had conveyed the waters of the springs across the Left Fork; also that, beginning with the year 1932 and continuously ever since for some 22 years, until during the year 1954, appellants' predecessors knew that respondents, without interruption or molestation, had used the waters of the springs pursuant to the status which resulted upon consummation of the contract which the trial court set out in its findings.

78 Idaho at 98, 298 P.2d at 747–48. Today, the West Spring Ditch still exists and, as the district court found, "continues to alter the flow of Stroud Creek[.]" This has not changed for over 90

years. Yet, notwithstanding our decision in *Kauer*, the majority concludes that West Springs Ditch is now an "unauthorized diversion of Stroud Creek."

By deeming the West Springs Ditch an unauthorized diversion, the majority has effectively overruled *Kauer* and unnecessarily altered an irrigation system that has been in place since 1932. This decision ignores the reality that the McConnells' proposed transfer application rests on a fiction that the confluence of Stroud Creek and Lee Creek is located in a place that anyone on the ground can plainly see does not exist. Based on this alternate reality, the majority affirms the Director's conclusion that the McConnells are somehow entitled to gain administrative access to Whittaker's water right 74-157 far from the actual observable confluence of these two streams. This conclusion is inconsistent with this Court's 1956 decision in *Kauer* that effectively adjudicated a dispute over the alterations to Stroud Creek and the West Springs Ditch, as noted above. The majority attempts to distinguish *Kauer* because the decision never addressed "the distinction between an alteration and a diversion." However, the majority does not address the fact that *Kauer*'s effect was to uphold the agreement that permitted Whittaker's predecessor to build the West Springs Ditch, which "capture[d] all waters found flowing in the creek at that place." 78 Idaho at 97, 298 P.2d at 747 (emphasis omitted). It was this Court's "inescapable" conclusion in *Kauer* that the McConnells' predecessors "had knowledge of," and "consented to," the alteration of the flow of Stroud Creek via the West Springs Ditch. *Id.* at 98, 298 P.2d at 748. The majority has now rebranded this judicially approved alteration of the stream as an "unauthorized diversion."

It is true that in the SRBA neither party properly claimed their rights, let alone referenced the 1932 agreement or the *Kauer* decision. Neither the McConnells, nor their predecessors, have asserted any claim regarding the legal validity of the 1932 alteration of Stroud Creek in the past 90 years. The majority concedes that the McConnells "failed to list the Kauer Ditch and the Lower Diversion as diversion points for their decreed water right." Yet, the Director and the majority have chosen to disrupt the status quo to the benefit of the McConnells and the detriment of the Whittakers. It would behoove this Court to heed the district court's analysis and follow a wiser path, one which would allow the system to continue to function as it has since 1932. The path taken by the majority is neither just nor equitable based on the circumstances as they now exist.

In responding to the dissent, the majority improperly frames the issue as one of revisiting water rights outside the channel of the SRBA, as was attempted in *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 806, 367 P.3d 193, 201 (2016), *abrogated on other grounds by 3G AG*

20

*LLC v. Idaho Dep't of Water Res.*, 170 Idaho 251, 509 P.3d 1180 (2022). In *Rangen*, a party who failed to timely assert its rights in the SRBA attempted to modify its partial decrees. *Id*. However, this case is not about changing a partial decree; rather, it concerns the McConnells' application to transfer a water right and obtain a second point of diversion at a location that ignores both our decision in *Kauer* and the reality on the ground. I recognize that the SRBA's Final Unified Decree is deemed " 'conclusive as to the nature and extent of all water rights within the Snake River Basin within the State of Idaho with a priority date prior to November 19, 1987' and is 'binding against all persons.' " *In re SRBA Case No. 39576 Sub[c]ase No. 37-00864*, 164 Idaho 241, 245, 429 P.3d 129, 133 (2018) (quoting Final Unified Decree at 9, 11, *In re SRBA*, No. 39576 (SRBA D. Ct. Idaho Aug. 26, 2014); and citing I.C. § 42-1420(1)). With limited exceptions, water rights with priority dates preceding November 19, 1987, had to be claimed in the SRBA or they would be disallowed. Final Unified Decree, at 11–12. Yet, as the majority notes, these facts present "a unique set of circumstances." The issue upon which this case turns was never decided in the SRBA, either explicitly or implicitly. However, the location of the stream flows was previously settled in *Kauer*, and no action taken in the SRBA has disturbed that ruling.

I cannot support a conclusion that allows the failings of *both* the McConnells and Whittaker to work to the detriment of only one party. Likewise, I cannot agree with the Director's conclusion that the 1932 agreement, as upheld in *Kauer*, was somehow superseded in the SRBA. To so hold would suggest that the partial decrees of the McConnells' and Whittaker's water rights entered by the SRBA *district court* somehow implicitly overruled an unchallenged opinion of the *Idaho Supreme Court* from 1956 regarding the location of Stroud Creek. This cannot be. "The opinion of a lower court is not binding on this Court," *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 875, 454 P.3d 504, 517 (2019), and "lower courts are obligated to abide by the decisions of this Court and the Court of Appeals." *Gonzalez v. Thacker*, 148 Idaho 879, 883, 231 P.3d 524, 528 (2009). Even in the unique confines of the SRBA, a lower court's decision cannot bind a superior court or overturn its precedent.

Furthermore, the majority has crafted an inequitable and troubling remedy. While holding that the "West Springs Ditch is an unauthorized diversion of the waters of Stroud Creek because it is not identified as a point of diversion in Whittaker's water right 74-157," the majority has simultaneously given its approval to a new point of diversion for the McConnells, one that was expressly "unauthorized" and shut down by an enforcement action by the Idaho Department of

21

Water Resources ("IDWR") in 2020. The district court acted properly in preventing such an outcome.

We held in *City of Blackfoot v. Spackman* that an agreement among water users may not be used to enlarge or alter decreed rights; however, the agreement in that case directly concerned an element of a water right—its purpose of use. 162 Idaho 302, 309–10, 396 P.3d 1184, 1191–92 (2017). It is important to understand that the *elements* of individual water rights were adjudicated in the SRBA based on established streams. The SRBA did not set out to redefine stream locations or flows, which is what has taken place here. The course of Stroud Creek is not an element of the water rights at issue here and the location of the confluence was already established by the result in *Kauer*. Because that alteration was affirmed by this Court in 1956, and no subsequent opinion of this Court has modified the effect of that ruling, the district court correctly determined that an injury analysis should be based on the circumstances as they currently exist.

In sum, the location of the confluence resulting from the changes made pursuant to the 1932 agreement, which was upheld in *Kauer*, should dictate the result. When viewed through the lens of what is plainly observable—not what might have been—the location of the confluence establishes that the McConnells' proposed transfer will injure Whittaker's water right. Thus, as the district court properly concluded, the McConnells' application should have been denied. While the majority states that it "cannot escape the fact that the West Springs Ditch is a man-made ditch constructed across the bed of Stroud Creek," I cannot escape the fact that this Court authorized those very changes to Stroud Creek in *Kauer*. Therefore, I must respectfully dissent.

STEGNER, J., sat on this case but did not participate in this substitute opinion due to his retirement.

22